UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHRISTOPHER CARSON SMITH,

                Plaintiff,

v.

DAVID DAWDY, et al.,

                Defendants.

_____/

Case No. 1:23-cv-575

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.
Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure,
Plaintiff consented to proceed in all matters in this action under the jurisdiction of a
United States magistrate judge. (ECF No. 1, PageID.59.) The Court granted Plaintiff
leave to proceed *in forma pauperis* in a prior order. (ECF No. 4.) Additionally, in a
prior order, the Court referred the case to the *Pro Se* Prisoner Civil Rights Litigation
Early Mediation Program and entered an order staying the case for any purpose other
than mediation. (ECF No. 6.) The case was removed from early mediation on August
10, 2023, pursuant to Defendant Grand Prairie Healthcare Services' request. (ECF
Nos. 8, 9.)[1]

---

[1] The stay of this proceeding that was entered to facilitate mediation will be lifted,
and the Court will direct the agency having custody of Plaintiff to commence
collection of the filing fee as outlined in the Court's prior order granting Plaintiff leave
to proceed *in forma pauperis*.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."  *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights."  *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal.  *See, e.g., Conway v. Fayette Cnty.*

*Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[2]

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.  Moreover, the Court will deny Plaintiff's motion (ECF No. 11) to return this case to mediation.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan.  The events about which he complains occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.[3] Plaintiff sues the following Defendants: Corrections Mental Health Program Director David Dawdy; MDOC Director Heidi Washington; Corrections Mental Health Program Involuntary Treatment employee Greg Johnson; Corrections Mental Health

---

[3] Plaintiff indicates that his description of events at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan, subsequent to his incarceration at LCF, are included within the complaint only to show that the "effects of Defendants['] actions still are lingering today. (ECF No. 1, PageID.11.)

Program Appeal Appointed Designee Jennifer Zaha; Grand Prairie Healthcare Services; Psychiatrists Melanie Clark, Hanna Saad, Siming Hummer, A. Kowalkowski, and Kirtida Patel; Psychologists Kevin Francies and M. Singhurse; Mental Health Professional Joan McDevitt; Corrections Mental Health Rights Specialist Sara Heydens; "RHIT" Connie Lester; LCF Mental Health Unit Chief Psychologist Gail Burch; Grievance Coordinator/Hearings Investigator J. Rohrig; Assistant Corrections Mental Health Program Director Michael Barrett; Mental Health Professional L. Bressett; and Mental Health Advisor Gabrielle McCall. Defendant Dawdy is sued in his individual and official capacity; Defendant Washington is sued in her official capacity only; all other Defendants are sued individually.

Plaintiff's complaint arises from a nearly four-year history of mental health treatment—both voluntary and involuntary—during his incarceration at LCF from October 16, 2018, until his transfer on July 28, 2022.  (ECF No. 1, PageID.11.) Plaintiff alleges that Defendants, in their respective roles, violated Plaintiff's civil rights by subjecting him to involuntary mental health treatment through procedures that Plaintiff deems unfair and in violation of Michigan law and MDOC policy.

Plaintiff first claims that, in 2018, Defendant Patel needed to alter Plaintiff's medications to fix an issue that arose because of an earlier treating physician's prescription.  (*Id.*, PageID.51.)  Plaintiff does not appear to dispute Defendant Patel's decision to reduce Plaintiff's antidepressants.  (*Id.*)

On February 14, 2019, Plaintiff notified Defendant Burch of his intent to terminate voluntary mental health treatment. (*Id.*, PageID.11.) Plaintiff met with Defendant Clark, his treating psychiatrist, at which time Defendant Clark determined that Plaintiff was not mentally ill or a threat to himself or others and entered an order to discharge him from the mental health program. (*Id.*) However, Defendant Clark later submitted a recommendation for involuntary mental health treatment on February 21, 2019. (*Id.*, PageID.12.) On February 27, 2019, Defendant Johnson served Plaintiff with notice that a hearing would be held to consider involuntary treatment. (*Id.*)

On March 1, 2019, Plaintiff appeared for a hearing before Defendant Saad and nonparties Psychologist Pamela Utz and Mental Health Professional Laura Hogan. (*Id.*, PageID.12–13.) The panel concluded that Plaintiff was mentally ill and ordered involuntary treatment in accordance with the plan proposed by Defendant Clark, which Defendant Clark carried out. (*Id.*, PageID.13.) Plaintiff appealed the panel's decision to Defendant Zaha. (*Id.*) Plaintiff claims that Defendants Zaha and Barrett withheld a decision on Plaintiff's appeal for two business days before Defendant Zaha denied Plaintiff's appeal. (*Id.*) Plaintiff was given medication by force by nonparties on March 7, 2019. (*Id.*)

Prior to the expiration of the order to involuntarily medicate Plaintiff, from March 22, 2019, through May 8, 2019, Plaintiff made several complaints regarding Defendant Clark to Defendants Burch and Heydens, and nonparty PREA Coordinator Inspector Matthews. (*Id.*, PageID.14.) On May 9, 2019, Defendant Clark concluded

that a prior PREA complaint was genuine.[4]  (*Id.*, PageID.15.)  She also changed Plaintiff's diagnosis from a mood disorder to schizophrenia.  (*Id.*, PageID.15.)

Thereafter, Defendant Barrett served Plaintiff with documents regarding a hearing to continue the involuntary medication.  (*Id.*, PageID.16.)  The hearing was held on May 23, 2019.  (*Id.*)  During the hearing, Defendant Clark submitted testimony regarding Plaintiff's mental health condition which Plaintiff claims was "false."  (*Id.*)  Defendant Burch also submitted "involuntary treatment documents."  (*Id.*)  There too, three non-treating mental health professionals found that the evidence supported continuing Plaintiff's involuntary medication.  (*Id.*)  Plaintiff was placed in segregation at the suggestion of Defendant Barrett.  (*Id.*)  Plaintiff appealed, but Defendant Zaha denied the same several weeks later.  (*Id.*)

On August 8, 2019, a non-party psychiatrist requested an extension of the forced medical treatment, relying upon documents prepared by Defendant Clark. (*Id.*, PageID.16–17.)  By order of Defendant Johnson, Defendant Barrett served Plaintiff with the involuntary treatment documents.  (*Id.*, PageID.17.)  Plaintiff appealed, but Defendant Zaha denied the appeal.  (*Id.*, PageID.18.)  After being forcefully medicated, Plaintiff received two misconducts.  (*Id.*)

The order for forced medical treatment was set to expire on February 24, 2020. (*Id.*)  On February 10, 2020, Defendant Clark performed a psychiatric evaluation, which reached several conclusions that Plaintiff deems "false," including that Plaintiff was serving a sentence for kidnapping and child endangerment, that

---

[4] Plaintiff does not describe the nature of the PREA complaint.

"Plaintiff disclosed thought content and a belief system to psychiatrists" and the panel, and that Defendant Clark did not find that Plaintiff displayed significant improvement. (*Id.*) After Plaintiff was given copies of his medical records, he submitted a grievance against Defendant Clark for falsifying Plaintiff's medical records. (*Id.*, PageID.19–20.) Plaintiff claims that following this grievance, Defendant Clark continued to submit medical records that Plaintiff deems false; Plaintiff does not elaborate on the alleged falsehoods. (*Id.*, PageID.19.)

On March 3, 2020, Defendant Burch called Plaintiff to her office to sign a consent for mental health treatment. (*Id.*, PageID.20.) Plaintiff signed the consent because he feared that he would otherwise be subjected to continued involuntary treatment. (*Id.*, PageID.20–22.)

On or after April 8, 2021, Plaintiff sent a request for medical records to Defendant Lester. (*Id.*, PageID.23.) Defendant Lester told Plaintiff that Plaintiff needed to resubmit his request with the relevant dates listed but that she would not process Plaintiff's request for records of specific medical professionals. (*Id.*) Plaintiff filed a grievance. (*Id.*, PageID.24.) When Plaintiff sent Defendant Rohrig a request for how to proceed with a retaliation claim against Defendant Lester, Defendant Rohrig referred Plaintiff to his grievance and the grievance process. (*Id.*) Plaintiff eventually received the requested records. (*Id.*)

In April and June 2021, Plaintiff submitted three requests to file a Recipient Rights Complaint. (*Id.*, PageID.22.) He received no response. (*Id.*) Thereafter, Plaintiff filed a complaint for discrimination in state court and a Recipient Rights

Complaint with Defendant Heydens.  (*Id.*)  Plaintiff claims that on several occasions he tried to receive assistance from the Office of Recipient Rights to file a complaint regarding his mental health care but was denied assistance "due to [his] disability." (*Id.*)  Plaintiff filed a grievance on August 10, 2021.  (*Id.*)

Plaintiff again requested records from Defendant Lester beginning in or around October 2021.  (*Id.*)  Plaintiff was not provided with the records until after he filed a grievance.  (*Id.*)  Defendant Lester refused to allow Plaintiff to insert statements into his medical records, as contemplated by Michigan law, because Plaintiff used the wrong form to make his request.  (*Id.*, PageID.25–26.)

In January 2022, Defendant Heydens instructed Defendant Burch to provide Plaintiff with the forms to allow Plaintiff to withdraw from voluntary treatment.  (*Id.*, PageID.26.)  The form was filed with the Branch County Court on January 6, 2022. (*Id.*)  The following day, Defendant Clark stated that Plaintiff held persecutory beliefs; she also included this information in Plaintiff's medical records.  (*Id.*, PageID.27.)  Plaintiff filed grievances related to the actions of Defendant Clark; Defendant Rohrig denied the same.  (*Id.*)

On January 21, 2022, Defendant McCall served Plaintiff with documents related to an involuntary treatment hearing to be held on January 24, 2022.  (*Id.*) Plaintiff then filed nine grievances, eight of which were returned to him as duplicative by Defendant Rohrig.  (*Id.*)

On the morning of January 24, 2022, Defendant Clark discontinued Plaintiff's unwanted voluntary medical treatment.  (*Id.*, PageID.29.)  Plaintiff acknowledges that Defendant Clark did not appear for the January 24, 2022, hearing to discuss the possibility of involuntary treatment. (*Id.*, PageID.30.)  Nonetheless, Plaintiff alleges that Defendant Clark submitted false or misleading statements as to Plaintiff's presentation to Defendant Clark as "suspicious/guarded, belligerent, preoccupied, and abnormal," the length of Plaintiff's "paranoid/persecutory delusions," that Plaintiff "was serving 40-60 years for kidnapping and child endangerment," the dosage of Plaintiff's medication, and other matters.  (*Id.*, PageID.28.)  At the suggestion of Defendant Burch, Plaintiff was found not to be in need of further involuntary treatment by the panel, which included Defendants Kowalkowski, Singhurse, Bresett, and McCall.  (*Id.*, PageID.31.)

Plaintiff filed several grievances following the January 24, 2022, hearing, which were returned, denied, not answered, or not answered in a timely manner by Defendant Rohrig.  (*Id.*, PageID.29, 30, 31, 32.)  However, Defendant Burch did indicate that a request had been made to Defendant Grand Prairie Healthcare Services to correct the errors in Plaintiff's records.  (*Id.*)

Defendant Burch continued her regular case management of Plaintiff.  (*Id.*, PageID.32.)  On February 24, 2022, Defendant Burch authored a report indicating that Plaintiff was scheduled for a comprehensive psychiatric evaluation the following day for clarification of Plaintiff's diagnosis for the purpose of discharging Plaintiff from the mental health program.  (*Id.*, PageID.32–33.)  Plaintiff filed a grievance

because this report was three days later than allowed and Plaintiff had already terminated his voluntary mental health treatment.  (*Id.*, PageID.33.)

On February 25, 2022, Defendant Saad performed a 122-minute comprehensive psychiatric evaluation and returned Plaintiff to a diagnosis of major depression.  (*Id.*)  Plaintiff filed another grievance regarding the timing of this evaluation as improper under state law and MDOC policy.  (*Id.,* PageID.33–34.)

On February 28, 2022, Defendant Dawdy filed a response to a show cause order issued by the Branch County Court, stating that Plaintiff was not receiving involuntary treatment and that, if any further involuntary treatment was contemplated, it would be done through the panel process.  (*Id.*, PageID.34–35.)

On March 1, 2022, Defendant Barrett served Plaintiff with documents regarding recommended involuntary treatment.  (*Id.*, PageID.35.)  A hearing was held on March 3, 2022, with Defendants Burch, Barrett, Saad, Hummer, Francies, and McDevitt.  (*Id.*)  Plaintiff presented several objections and arguments.  (*Id.*, PageID.36–37.)  He claims that Defendant Saad provided false testimony but does not elaborate on the falsehoods.  (*Id.*, PageID.40.)

Plaintiff also claims that Defendant Saad testified that a different definition of "being a threat to self or others" is applied to prisoners than others outside of the prison environment.  (*Id.*, PageID.40).  Defendant Saad explained that, in the case of chronic mental illness, where Plaintiff has "had serious . . . detachments from reality, exact serious moments where he has contemplated or actually attempted suicide[ i]t would be irresponsible of the . . . system to neglect the . . . requirement [of] check-ins,

11

which is not an undue burden, and nor is it harassment." (*Id.*, PageID.55.) Defendant Saad noted that, in the community, a person must be "at eminent risk," but that the standard was different in prison. (*Id.*) Plaintiff claims that he had no misconducts to show that Plaintiff was a risk to others (*id.*), but does not remark on Defendant Saad's concerns about Plaintiff's risk to himself. Plaintiff also claims that the March 1, 2022, panel relied upon the medical records of Defendant Clark, with which Plaintiff also disagrees. (*Id.*, PageID.37.)

Finally, during the panel hearing, it was noted that Plaintiff was diagnosed with cerebral palsy late in life and that his neuropsychiatric symptoms could be masking as mental illness. (*Id.*, PageID.54.) It was recommended that further neurological work-up could eliminate some of these variables. (*Id.*) The panel found Plaintiff to be mentally ill "and that the proposed plan of service as stated by the treating psychiatrist is suitable." (*Id.*, PageID.42.) Aside from the recommendation of further neurological work-up, Defendant Saad did not request involuntary medication, only monitoring, and "no plan of service was recommended by Plaintiff's treating psychiatrist." (*Id.* (capitalization corrected).) Plaintiff's appeal of this decision was denied by Defendant Zaha. (*Id.*, PageID.42–43.)

Plaintiff submitted a grievance, claiming that the March 1, 2022, hearing was invalid under Michigan law and MDOC policy. (*Id.*, PageID.37–39.) Defendant Rohrig refused to process the grievance and Plaintiff filed another. (*Id.*) Plaintiff also submitted a grievance as to the appeal. (*Id.*, PageID.42–43.)

Following the March 1, 2022, panel hearing, Plaintiff requested a consultation with Defendant Mental Health Rights Specialist Heydens but she refused to provide Plaintiff with a consultation. (*Id.*, PageID.43.) Thereafter, Plaintiff submitted three grievances and a state court complaint against Defendant Heydens for violation of his civil rights. (*Id.*, PageID.43–46.) When Defendant Rohrig denied or refused to answer Plaintiff's grievances, Plaintiff filed additional grievances related to those decisions. (*Id.*, PageID.46–47.)

"On May 18, 2022, Defendant Burch was permitted by Defendant Dawdy to discharge Plaintiff" from the mental health program. (*Id.*, PageID.47.)

On June 6, 2022, Defendant Washington changed MDOC Policy Directive 04.06.183, removing the requirement that prisoners be provided three business days' notice of an involuntary treatment hearing. (*Id.*, PageID.48.)

Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages. He asserts that Defendants subjected Plaintiff to cruel and unusual punishment by forcibly medicating him, (*id.*, PageID.49), and violated his right to due process by denying him a fair hearing, (*id.*, PageID.51). Plaintiff also claims that, because of his status as a prisoner, he was treated differently from the general public. (*Id.*, PageID.39, 49). He claims that "Defendant J. Rohrig has an inconsistent process for filing grievances on medical professionals" and, as a result, denied Plaintiff the full and equal use of a public service (*id.*, PageID.30), that Defendants Clark and Lester retaliated against him, and that Defendants generally engaged in a conspiracy to violate Plaintiff's rights. Plaintiff asserts that he was

subjected to discrimination in violation of Michigan law because of his disability and his mother's disability (*id.*, PageID.39–40), that MDOC Policy Directive 04.06.183 allows involuntary treatment for developmental disabilities alone, and that "Defendant Saad exclusively used Plaintiff's cerebral palsy and Plaintiff's mother's disease to justify a need to maintain Plaintiff within the CMHP for involuntary treatment," (*id.*, PageID.48–49).   Finally, Plaintiff takes issue with Defendant Lester's delayed responses to Plaintiff's records requests and denial of his request to place statements into his medical records under Michigan law; he demands that Defendant Washington be required to form a policy that allows prisoners to place statements into their mental health records per Michigan statute (*id.*, PageID.53).

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.   *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").   The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability

requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly*/*Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

## A.    Claims Pursuant to 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Liberally construed, it appears that Plaintiff's complaint sets forth claims under § 1983 for violation of Plaintiff's Eighth, Fourteenth, and First Amendment rights. Plaintiff alleges that Defendants violated Plaintiff's Eighth Amendment rights by forcibly medicating him, (ECF No. 1, PageID.49), and violated his Fourteenth Amendment rights to procedural due process by denying Plaintiff a fair hearing in the process, and through the handling of Plaintiff's grievances (*id.*, PageID.51).  Plaintiff also claims that, because of his status as a prisoner, he was

15

treated differently from the general public in violation of Plaintiff's Fourteenth Amendment right to equal protection. (*Id.*, PageID.39, 49.) Finally, Plaintiff alleges that Defendants Clark and Lester retaliated against him, which the Court will construe as First Amendment claims.

### 1. Official Capacity Claims for Damages

As noted above, Plaintiff sues Defendant Dawdy in both his individual and official capacity. Defendant Washington is sued in her official capacity only. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of

Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff seeks damages as well as injunctive relief.  Official capacity defendants, however, are absolutely immune from monetary damages.  *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's damages claims against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity.  *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official).  The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state.  *Graham*, 473 U.S. at 167 n.14.  Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority.  *Id.*

At this stage of the proceedings, the Court will not dismiss Plaintiff's official capacity claims for injunctive relief against Defendants Dawdy and Washington based on immunity and will address Plaintiff's official capacity claims for injunctive relief against Defendants Dawdy and Washington below.

### 2.      Claims Against Defendant Dawdy

Plaintiff seeks to hold Defendant Dawdy liable for the actions of those under his command.  Yet, it is well-established that government officials, such as Defendant Dawdy, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the

defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Plaintiff fails to allege any *facts* showing that Defendant Dawdy encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in their conduct.  Plaintiff alleges that Defendant Dawdy filed a response to a show cause order issued by the Branch County Circuit Court, indicating that Plaintiff was not receiving involuntary treatment at that time but that, if involuntary treatment were contemplated, the paneling process would be used.  (ECF No. 1, PageID.34–35.)  Plaintiff claims in a conclusory fashion that this filing demonstrates that Defendant Dawdy approved of Plaintiff being served with involuntary treatment documents less than three business days prior to a hearing.  Setting aside the merits of Plaintiff's claim of untimely notice, which will be discussed in detail below, Plaintiff provides no factual basis for any link between Defendant Dawdy's statement that a paneling process would be use, and Plaintiff's conclusion regarding the timing of prior notices. Though Plaintiff's complaint is by no means short of factual background, it is Plaintiff's obligation to plead facts which would "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Plaintiff has not done so. Accordingly, for the reasons set forth above, the Court will dismiss Plaintiff's § 1983 claims against Defendant Dawdy.

### 3.    Eighth Amendment Claims

Plaintiff alleges that Defendants violated Plaintiff's Eighth Amendment rights by subjecting Plaintiff to involuntary mental health treatment.  Specifically, Plaintiff alleges that Defendant Clark incorrectly concluded that Plaintiff was mentally ill and suffered from persecutory beliefs, delusions, and "distortions" and other conditions necessitating involuntary treatment.  Plaintiff also disagreed with Defendant Clark's diagnosis of Plaintiff's mental health condition and with Defendant Clark's assessment of Plaintiff's presentation.   Plaintiff claims that Defendant Burch submitted the paperwork requesting involuntary treatment and that several panels of non-treating medical professionals relied upon Defendant Clark's assessments in concluding that Plaintiff required involuntary treatment, including Defendants Kowalkowski, Singhurse, Johnson, Hummer, Francies, Patel, McDevitt, Bressett, and McCall.  Defendant Zaha denied Plaintiff's appeals of those rulings.  Finally, Plaintiff claims that Defendant Saad recommended further monitoring and assessment of Plaintiff's condition and relied upon Defendant Clark's medical records in assessing Plaintiff and making recommendations regarding Plaintiff's care.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  It obligates jail authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).  The Eighth Amendment is violated when a jail official is deliberately indifferent to the serious medical needs of an inmate.  *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A viable claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The

prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989))

In holding that the Eighth Amendment was not violated by the involuntary administration of lithium to a mentally ill patient, the Sixth Circuit explained:

> There is a recognized Eighth Amendment protection for prisoners against "deliberate indifference" to a serious medical need, but that indifference generally involves the failure to provide medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In cases like Kramer's, where the medical personnel are treating him and have made a decision about the precise course of action he requests, claims are generally unsuccessful. *E.g.*, *Davis v. Agosto*, 89 F. App'x 523, 529 (6th Cir. 2004) (denying Eighth Amendment claim on summary judgment where defendant argued that the unwanted treatment of a head wound unnecessarily inflicted pain upon him).
>
> This is because failing to prevent medical harm only "rises to the level of a constitutional violation where both objective and subjective requirements are met." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Where the prisoner was in the care of a doctor (and the allegation is deliberate indifference based on care given and not intentional infliction of pain), our cases offer two verbal formulations to describe when a doctor's actions were subjectively callous so as to be constitutionally cruel and unusual punishment. First, if the prisoner received "grossly inadequate care," we will conclude a doctor acted with "subjective" deliberate indifference. *Perez v. Oakland Cnty.*, 466 F.3d 416, 424 (6th Cir. 2006). Second, we have favorably cited the Eleventh Circuit's test: "whether a reasonable doctor . . . could have concluded his actions were lawful." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1034 (11th Cir. 1989)). While both approaches lack absolute analytic precision, it is clear that Kramer has not alleged facts that rise to the level of seriousness they convey. Kramer asserts only that he disagrees with the decision to keep him on lithium in the face of the risk of kidney failure and that outside doctors have not been permitted to review the decision made by the prison's medical professionals. This does demonstrate a possible disagreement over which health problem-the mental disorder or the risk of kidney problems-posed a more serious

medical threat to Kramer. But it is far short of an allegation of "grossly inadequate care" or unlawful behavior. *Cf. Terrance*, 286 F.3d at 844–47 (holding that doctors and nurses could be found to have provided grossly inadequate care after they failed to supervise decedent or plan for risks associated with decedent's medical conditions despite their knowledge of immediate risk factors of sudden death). That is, even if he were to prove the disagreement at trial, he would not be entitled to relief because no alleged fact tends to show that the prison doctors provided "grossly inadequate care" or that their treatments were so medically unsound as to violate the law.

*Kramer v. Wilkinson*, 302 F. App'x 396, 400–01 (6th Cir. 2008).

As in *Kramer*, even assuming that Plaintiff has alleged an objectively serious medical condition, Plaintiff's complaint does not allege a failure to provide medical care but a disagreement with the type of care provided. This falls far short of deliberate indifference.

Moreover, in connection with Plaintiff's claims of involuntary treatment, Plaintiff alleges that Defendant Clark made representations within her medical records and to the hearing panels that Plaintiff claims were "false," leading to Plaintiff's involuntary treatment. However, the factual allegations within the complaint do not support Plaintiff's conclusory assertion that Defendant Clark had submitted deliberately false testimony in an effort to see that Plaintiff was provided with involuntary treatment. First, Plaintiff claims that Defendant Clark falsely testified and included within her medical records that Plaintiff was serving a sentence of "40-60 years for kidnapping and child endangerment." (ECF No. 1, PageID.28.) However, public records indicate that Plaintiff is in fact serving a 40–60-year sentence for "kidnapping – child enticement," in violation of Mich. Comp. Laws                750.350.             Offender              Tracking              Information,

24

https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=233282   (last visited Oct. 25, 2023).   While the Court must typically accept Plaintiff's factual allegations as true, "this court may take judicial notice of public records, and we are not required to accept as true factual allegations that are contradicted by those records." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021), (citing *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017)), *cert. denied,* 142 S. Ct. 773 (2022).

Second, Plaintiff alleges that Defendant Clark changed Plaintiff's diagnoses, believed a PREA complaint against Plaintiff to be genuine, determined that Plaintiff was not making significant improvements, held persecutory beliefs, and suffered from paranoid delusions, and that Plaintiff presented as "suspicious/guarded, belligerent, preoccupied, and abnormal."   Alone, these allegations show only a difference in professional judgment, observations, diagnosis, or treatment, not false statements of fact.   Differences in judgment between an inmate and medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.   *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014).   This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.   *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

As to Defendant Saad, Plaintiff claims only that Defendant Saad provided false testimony at the March 1, 2022, panel hearing.   However, Plaintiff does not describe the alleged falsehood(s) in any way that would allow this Court to conclude that

Plaintiff has stated a plausible claim.  The statement that Plaintiff attributes to Defendant Saad—that "[i]t would be irresponsible of the . . . system to neglect the . . . requirement [of] check-ins," in a situation such as this where Plaintiff "had serious . . . detachments from reality, exact serious moments where he has contemplated or actually attempted suicide" (ECF No. 1, PageID.55)—illustrates the opposite of deliberate indifference: a subjective concern for Plaintiff's well-being that, at the very least, satisfies Eighth Amendment standards.

Plaintiff's allegations that the remaining Defendants relied, in part, upon Defendant Clark's medical opinions in determining that Plaintiff was in need of involuntary treatment or facilitated that process also do not rise to the level of deliberate indifference.  Plaintiff's complaint details a hearing process in which both Plaintiff and Plaintiff's treating physicians were able to present testimony.  In light of the evidence presented, each panel concluded that Plaintiff was mentally ill and in need of treatment.  There is absolutely nothing to indicate that any Defendant was subjectively aware that, by recommending, facilitating, ordering, or upholding the provision of involuntary mental health treatment, Plaintiff faced a substantial risk of serious harm.  Accordingly, Plaintiff's Eighth Amendment claims will be dismissed.

### 4.    Fourteenth Amendment Due Process Claims

Plaintiff next claims that Defendants violated Plaintiff's rights under the Fourteenth Amendment through the provision of involuntary treatment and the accompanying procedures.  In *Vitek v. Jones*, 445 U.S. 480, 493 (1980), the United States Supreme Court held that a criminal conviction does not authorize the state to classify a prisoner as mentally ill and to subject him to involuntary psychiatric

treatment without affording him additional due process protections.  The *Vitek* Court noted that the state had a strong interest in segregating and treating mentally ill patients, but that a prisoner's interest in not being arbitrarily classified as mentally ill and subjected to involuntary treatment was also strong.  The Court concluded that the state must apply "appropriate procedural safeguards against error."  *Id.* at 495.

Subsequently, the Supreme Court addressed the involuntary medication of a prisoner pursuant to the following policy:

> Policy 600.30 was developed in partial response to this Court's decision in *Vitek v. Jones,* 445 U.S. 480 (1980). The Policy has several substantive and procedural components. First, if a psychiatrist determines that an inmate should be treated with antipsychotic drugs but the inmate does not consent, the inmate may be subjected to involuntary treatment with the drugs only if he (1) suffers from a "mental disorder" and (2) is "gravely disabled" or poses a "likelihood of serious harm" to himself, others, or their property. Only a psychiatrist may order or approve the medication. Second, an inmate who refuses to take the medication voluntarily is entitled to a hearing before a special committee consisting of a psychiatrist, a psychologist, and the Associate Superintendent of the Center, none of whom may be, at the time of the hearing, involved in the inmate's treatment or diagnosis. If the committee determines by a majority vote that the inmate suffers from a mental disorder and is gravely disabled or dangerous, the inmate may be medicated against his will, provided the psychiatrist is in the majority.
>
> Third, the inmate has certain procedural rights before, during, and after the hearing. He must be given at least 24 hours' notice of the Center's intent to convene an involuntary medication hearing, during which time he may not be medicated. In addition, he must receive notice of the tentative diagnosis, the factual basis for the diagnosis, and why the staff believes medication is necessary. At the hearing, the inmate has the right to attend; to present evidence, including witnesses; to cross-examine staff witnesses; and to the assistance of a lay adviser who has not been involved in his case and who understands the psychiatric issues involved. Minutes of the hearing must be kept, and a copy provided to the inmate. The inmate has the right to appeal the committee's decision to the Superintendent of the Center within 24 hours, and the Superintendent must decide the appeal within 24 hours after its receipt. *See* App. to Pet. for Cert. B-3. The inmate may seek judicial review of a

committee decision in state court by means of a personal restraint petition or extraordinary writ. *See* Wash. Rules App. Proc. 16.3 to 16.17; App. to Pet. for Cert. B-8.

Fourth, after the initial hearing, involuntary medication can continue only with periodic review. When respondent first refused medication, a committee, again composed of a nontreating psychiatrist, a psychologist, and the Center's Associate Superintendent, was required to review an inmate's case after the first seven days of treatment. If the committee reapproved the treatment, the treating psychiatrist was required to review the case and prepare a report for the Department of Corrections medical director every 14 days while treatment continued.

*Washington v. Harper*, 494 U.S. 210, 215–16 (1990) (footnotes omitted). The Supreme Court held that this policy comported with the requirements of procedural due process, precluding a Fourteenth Amendment claim. *Id.* at 228.

Here, too, Plaintiff own allegations demonstrate that he was provided with at least 24-hours' notice of hearings, which were held before a panel, none of whom were involved in Plaintiff's treatment. Plaintiff was entitled to—and did in fact—appeal the panels' decisions, comporting with the requirements of procedural due process.

Plaintiff again claims Defendants Clark and Saad independently violated Plaintiff's due process rights by presenting what Plaintiff deems to be false information at panel hearings and within Plaintiff's medical records, depriving Plaintiff of a fair hearing. However, as discussed above, Plaintiff's well-pleaded factual allegations simply do not support Plaintiff's conclusory allegations.

Moreover, the provision of false testimony is insufficient on its own to establish a denial of due process. *See Fisher v. Kerr*, No. 1:23-cv-393, 2023 WL 3192473, at *5 (W.D. Mich. May 2, 2023) (citing *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005)). Such an action violates due process only where the Plaintiff was denied

procedural protections—which Plaintiff was not—"or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights." *Id.*  As will be discussed in connection with Plaintiff's claim of First Amendment retaliation, Plaintiff has provided the Court with no facts that would plausibly suggest that Defendant Clark was motivated by a retaliatory animus.

Finally, Plaintiff disputes the timing of various events as beyond that permitted under state law and MDOC policy.  He alleges that Defendant Burch authored a report three days later than what was allowed under Michigan law, (ECF No. 1, PageID.33), and that Defendant Saad performed a comprehensive evaluation, the timing of which was also improper under state law, (*id.*, PageID. 33–34).  Plaintiff also claims that Defendants Johnson, Barrett, and McCall served Plaintiff or allowed Plaintiff to be served with involuntary treatment documents less than three business days prior to the panel proceedings, in violation of Michigan law and MDOC policy and that Defendant Grand Prairie Healthcare Services has a "policy" of allowing the same. (*Id.*, PageID.57.)  Plaintiff alleges that Defendant Dawdy approved of Plaintiff being served in an untimely manner[5] and that Defendant Washington later amended MDOC Policy Directive 04.06.183 to remove the requirement that prisoners be provided three business days' notice of an involuntary treatment hearing.  (ECF No.

---

[5] As discussed above, Plaintiff provides no factual basis for his claim that Defendant Dawdy approved of Plaintiff being served with involuntary treatment documents less than three business days prior to a hearing. Nonetheless, for sake of argument, the Court will address the same.

1, PageID.48.)   Policy Directive 04.06.183, as amended, now provides that "[a]n involuntary treatment hearing shall be held no sooner than 24 hours but within seven business days after the prisoner, and their guardian if applicable, are provided the documents described in Paragraph T." MDOC Policy Directive 04.06.183 ¶U (eff. Jun. 6, 2022).   In seeking injunctive relief, Plaintiff asks that this Court require Defendant Washington to restore the requirement that prisoners be provided with three days' notice.   Even taking all of Plaintiff's well-pleaded factual allegations as true, Plaintiff is not entitled to relief under § 1983.

First, § 1983 does not provide redress for violations of state law or MDOC policy. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).   The only possible way a state law or policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must allege facts that would show: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).   "Without a protected liberty or property interest, there can be no federal procedural due process claim."   *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).   Courts have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure.   *See Olim v. Wakinekona*, 461 U.S. 238, 250

30

(1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164.  Thus, Plaintiff's allegations that Defendants generally violated state law or MDOC policy do not state a claim.

However, Plaintiff also claims more generally that providing less than three-days' notice of the intent to convene a hearing for involuntary treatment purposes violates Plaintiff's constitutional right to procedural due process.  As set forth in *Washington* above, the Supreme Court held that a similar policy requiring that a prisoner "be given at least 24 hours' notice of the Center's intent to convene an involuntary medication hearing, during which time he may not be medicated" comported with procedural due process.  *Id.* at 216, 228.  Plaintiff does not allege that he was ever given less than 24-hours' notice of a panel hearing.  And MDOC Policy Directive 04.06.183, as amended, maintains a requirement that prisoners be provided notice at least 24 hours in advance of a panel hearing.  Thus, for each of these reasons, Plaintiff's claims regarding the untimely notice of hearings and other events, including Plaintiff's request for injunctive relief, will be dismissed.

### 5. Fourteenth Amendment Equal Protection Claims

Plaintiff claims that his involuntarily medical treatment violated his right to equal protection.   The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673,

681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Here, Plaintiff claims that he was treated differently because of his disability[6] and his status as a prisoner.  However, disabled individuals are not members of a protected class simply by virtue of their disabilities, *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985), and "prisoners are not considered a suspect class for purposes of equal protection litigation," *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005).  Because no fundamental right is at issue, Plaintiff's claim is reviewed under the rational basis standard.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006).  "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'"  *Id.*  (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)).  To successfully plead an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must plead facts that would plausibly suggest

---

[6] It is also worth noting that Plaintiff's conclusory allegation that "Defendant Saad exclusively used Plaintiff's cerebral palsy and Plaintiff's mother's disease to justify a need to maintain Plaintiff within the CMHP for involuntary treatment" (ECF No. 1, PageID.48) is not supported by the factual allegations in Plaintiff's complaint. Plaintiff acknowledges that "Defendant Saad conducted a 122-minute Comprehensive Psychiatric Evaluation," in which Defendant Saad personally concluded that Plaintiff suffered from major depression, (*id.*, PageID.33). Plaintiff further specifies that Defendant Saad did not request involuntary medication, only monitoring (*id.*, PageID.41) and that Defendant Saad recommended further evaluation to rule out the possibility that what is perceived as mental illness may be in fact neuropsychiatric symptoms of Plaintiff's condition (*id.*, PageID.55).

that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of any equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). Plaintiff's complaint, however, fails to provide the Court with any facts that support Plaintiff's allegation of disparate treatment, let alone allege facts that would support the inference that those who were treated differently were similarly situated in all relevant respects, as required to state an equal protection claim. *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) ("To be a similarly-situated [person], the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'" (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998))); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain

sufficient factual matter to state a plausible claim."). Plaintiff's allegations of discrimination are wholly conclusory and conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss Plaintiff's equal protection claims.

### 6.    First Amendment Retaliation Claim

The Court has construed Plaintiff's complaint to assert a First Amendment retaliation claim against Defendants Clark and Lester. Plaintiff claims that he made several complaints regarding Defendant Clark in March, April, and May 2019. (ECF No. 1, PageID.14.) He alleges that, following these complaints, on May 9, 2019, Defendant Clark reached conclusions with which Plaintiff disagrees, including that a PREA report against Plaintiff was genuine and that Plaintiff suffered from schizophrenia. (*Id.*) Plaintiff also claims that Defendant Clark ignored Plaintiff's "forced withdrawal of notice of termination, dated May 8, 2019." (*Id.*) As to Defendant Lester, Plaintiff indicates only that he wished to file a complaint against Defendant Lester for retaliation after Defendant Lester did not promptly fulfill Plaintiff's request for medical records. (*Id.*, PageID.24.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in

34

part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff provides no facts whatsoever regarding the basis for his retaliation claim against Defendant Lester.  He describes only that he wished to file a retaliation claim against Defendant Lester after Defendant Lester refused to provide Plaintiff medical records in the manner that Plaintiff had requested, explaining that Plaintiff would only be provided with copies of records by date.  (ECF No. 1, PageID.23–24.) However, Plaintiff does not describe any alleged protected conduct that preceded Defendant Lester's decision and does not set forth any facts that would even imply that Defendant Lester was motivated by retaliatory animus.  Accordingly, the Court concludes that Plaintiff has failed to state a plausible claim against Defendant Lester.

With respect to his claim against Defendant Clark, Plaintiff indicates that he made various complaints regarding Defendant Clark to Defendants Burch and Heydens, and nonparty PREA Coordinator Inspector Matthews and that, following those complaints, Defendant Clark changed Plaintiff's diagnosis and determined that a PREA complaint against Plaintiff was genuine.  (ECF No. 1, PageID.14–15.)  Even assuming that Plaintiff has satisfied the first two elements of a retaliation claim, Plaintiff has provided the Court with no facts plausibly to suggest that Defendant Clark retaliated against Plaintiff because of his protected conduct.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff again merely alleges the ultimate fact of retaliation against Defendant Clark. Simply because Plaintiff's complaints about Defendant Clark preceded one of Defendant Clark's many medical records regarding Plaintiff's mental health condition, does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance alone is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that

36

"[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive").  Plaintiff has provided the Court with no facts that would suggest that Defendant Clark knew of Plaintiff's complaints.  And Plaintiff makes clear that Defendant Clark had recommended that Plaintiff be provided with involuntary mental health treatment even *before* Plaintiff engaged in the alleged protected conduct.  (ECF No. 1, PageID.12.)  Plaintiff's speculative, conclusory allegations fail to state a First Amendment retaliation claim against Defendant Clark.  Therefore, Plaintiff's First Amendment retaliation claims will be dismissed.

### 7.    Claims Against Defendant Rohrig

Plaintiff asserts that Defendant Rohrig improperly denied Plaintiff's grievances or refused to process Plaintiff's grievances as required by MDOC policy. However, the courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  And, Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); Wynn v. Wolf, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Moreover, Plaintiff's right to petition the government was not violated by Defendant Rohrig's denial of Plaintiff's grievances.  The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).  And Defendant Rohrig's action did not bar Plaintiff from seeking a remedy for his grievance.  *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process.  *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from proceeding with his various grievances, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).  The

exhaustion requirement only mandates exhaustion of available administrative remedies.  See 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio*, 20 F. App'x 469, 470–71 (6th Cir. 2001).

Therefore, for the reasons set forth above, Plaintiff fails to state a claim against Defendant Rohrig regarding the denial of Plaintiff's grievance or Defendant Rohrig's refusal to process the same.

### 8.   Claims Against Defendant Heydens

In October 2022, Plaintiff filed a complaint with the Michigan Office of Recipient Rights through Defendant Heydens, who Plaintiff describes as the Corrections Mental Health Rights Specialist.  Plaintiff alleges that he later requested a consultation with Defendant Heydens but that she refused to provide Plaintiff with the same.  The Court is unable to discern how denying Plaintiff a consultation could be said to violate Plaintiff's civil rights.

To the extent that Plaintiff claims that, because he was denied a consultation, Plaintiff was denied access to the Courts, Plaintiff fails to state a claim.  It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418

U.S. 539, 556 (1974).  Prison officials have a two-fold duty to protect a prisoner's right of access to the courts.  *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995).  First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration.  *Id.* (citing *Bounds*, 430 U.S. at 824–28).  Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts.  *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

However, an indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to

> attack their sentences, directly or collaterally, and in order to challenge
> the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional)
> consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff does not describe the nature of his Recipient Rights complaint, let alone provide this Court with sufficient facts that would suggest that Plaintiff suffered any actual injury due to Defendant Haydens' denial of a consultation in 2022. This is particularly true where Plaintiff has acknowledged that he had filed both a state and federal court lawsuit and a recipient rights complaint regarding his involuntary treatment. Accordingly, the Court will dismiss Plaintiff's claims against Defendant Haydens.

### 9.    Claims Against Defendant Grand Prairie Healthcare Services

Plaintiff identifies Defendant Grand Prairie Healthcare Services as the employer of Defendants Clark, Saad, Hummer, (ECF No. 1, PageID.6), Kowalkowski, (*id.*, PageID.9), and Patel (*id.*, PageID.10), and alleges that Defendant Grand Prairie Healthcare Services maintains a custom or policy of allowing its employees to conduct comprehensive psychiatric evaluations in an untimely manner, in violation of Michigan law and MDOC policy, (*id.*, PageID.57), and that it holds prisoners to a different standard than the general public when determining whether prisoners pose a threat of harm to themselves or to others, (*id.*, PageID.55).  These allegations are insufficient to state a claim under § 1983.

A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like Grand Prairie Healthcare Services —can "be sued under § 1983 as one acting 'under color of state law.'"  *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins,* 487 U.S. 42, 54 (1988)).  However, the requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983.  *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 817–18 (6th Cir. 1996) (same); *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson,* 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same).  This means that Defendant Grand Prairie Healthcare Services, like a governmental entity, may be held liable

under § 1983 only if it actually caused a constitutional deprivation. *See Starcher*, 7 F. App'x at 465 (citing *Monell,* 436 U.S. at 690). It "cannot be held liable solely because it employs a tortfeasor" on a theory of *respondeat superior* or vicarious liability. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).

"[T]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000)); *see also Przybysz v. City of Toledo*, 746 F. App'x 480, (6th Cir. 2018) ("As a threshold matter, there can be no municipal liability under *Monell* when there is no constitutional violation"). As discussed above, Plaintiff fails to state any constitutional injury based upon the untimeliness of hearings, in violation of Michigan law and MDOC policy, or the alleged practice of Grand Prairie Health Services in evaluating prisoners differently than the general public when considering—in the case of the March 1, 2022, hearing—monitoring for a risk to themselves or others based upon mental illness. Therefore, Plaintiff's claims against Defendant Grand Prairie Healthcare Services will be dismissed.

## B. Claims Pursuant to 42 U.S.C. § 1985

Plaintiff further suggests that Defendants conspired to violate his rights, in violation of 42 U.S.C. § 1985. To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property,

or a deprivation of any right or privilege of a citizen of the United States.  *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).  Moreover, the plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233.  Plaintiff's complaint is devoid of facts that would suggest that Defendants acted jointly for the purpose of depriving Plaintiff of equal protection or even that Defendants' alleged actions were motivated by his membership in a distinct class.  Plaintiff's § 1985 conspiracy claim will, therefore, be dismissed.

### C.     Claims Pursuant to the Americans with Disabilities Act

Plaintiff claims that he was subjected to discrimination because of his disability and his mother's disability.  (ECF No. 1, PageID.39–40).  He also claims that "Defendant J. Rohrig has an inconsistent process for filing grievances on medical professionals" and, as a result, Plaintiff has been denied the full and equal use of this public service.  (*Id.*, PageID.30.)  The Court has construed Plaintiff's allegations as a claim that Defendants Washington and Dawdy, in their respective official capacities,[7] violated Plaintiff's rights under the Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 *et seq.*

---

[7] [T]he proper defendant under a Title II claim is the public entity or an official acting in his official capacity. . . . Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity." *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Therefore, any ADA claims by Plaintiff against the individual Defendants in their respective individual capacities are properly dismissed for failure to state a claim.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481– 82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).  In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability.  *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).  The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).

Here, Plaintiff complaint is devoid of facts that would plausibly suggest that Defendants denied him benefits or access to any public service, including for sake of argument, the grievance process, *because of* his mental illness, his diagnosis of cerebral palsy, or because of his mother's diagnosis.  And, as discussed above, Plaintiff's complaint is devoid of facts that would support any claim of discrimination.  Plaintiff instead appears to ask this Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.  It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit

the Court to draw a reasonable inference that Defendants violated the ADA.  *See*

*Iqbal*, 556 U.S. at 679.  Plaintiff has not met his initial burden.

Moreover, Plaintiff's conclusory allegation that MDOC policy allows for the

involuntary treatment of prisoners solely on account of developmental disability (ECF

No. 1, PageID.48–49) is belied by the language of the policy itself.  MDOC Policy

Directive 04.06.183, effective at the time of Plaintiff's involuntary treatment, did not

include developmental disabilities within its definition of "mental illness" or within

its process to involuntary admission.  MDOC Policy Directive 04.06.183 (eff. Oct. 9,

1995).  MDOC Policy Directive 04.06.183, effective June 6, 2022, referenced by

Plaintiff, now includes within its definition of "mental disability/illness" any

"[d]evelopmental disorder that usually manifests before the age of 18 years and is

characterized by severe and pervasive impairment in several areas of development,"

but that portion of the "definitions" section alone does not allow for involuntary

treatment. MDOC Policy Directive 04.06.183 ¶ F.3. (eff. Jun. 6, 2022).  The process

for "involuntary treatment proceedings" remains separately dictated by paragraphs

T through FF, including the due process protections described above. *Id*. ¶¶ T–FF.

Because Plaintiff fails to allege facts that would plausibly suggest that Plaintiff

was "denied the opportunity to participate in or benefit from Defendants' services,

programs, or activities, or was otherwise discriminated against by Defendants, by

reason of plaintiff's disability," Plaintiff's ADA claim will be dismissed.

### D.    State Law Claims

Finally, Plaintiff brings claims against Defendants for violation of state law.

He alleges that Defendant Lester failed to provide him with medical records in a

timely fashion and refused to allow him to insert statements into his medical records, as contemplated by Michigan law, that Defendants violated Michigan law by not properly providing Plaintiff with notice three days in advance of panel hearings or completing evaluations and reports in a timely manner, and that he was subjected to discrimination in violation of Michigan law because of his disability and his mother's disability. He also seeks an injunction to require that Defendant Washington create a policy that would allow prisoners to place statements into their mental health records per Michigan statute. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh

our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## III.   Plaintiff's Motion to Return Case to Mediation

Plaintiff has filed a motion (ECF No. 11.), seeking relief from this Court's August 10, 2023, order (ECF No. 9), which removed this case from early mediation. In his motion, Plaintiff seeks to "return this case to mediation, return the stay, enter dates for mediation, and enter default on the remaining Defendants" based upon the failure by Defendant Grand Prairie Healthcare Services to file a timely statement to exclude the case from the Court's early mediation program.  (*Id.*)  As detailed herein, Plaintiff's claims will be dismissed in their entirety.  Therefore, the Court will deny Plaintiff's motion as moot.

## Conclusion

The stay of this proceeding that was entered to facilitate mediation will be lifted, and the Court will direct the agency having custody of Plaintiff to commence collection of the filing fee as outlined in the Court's prior order granting Plaintiff leave to proceed *in forma* pauperis.  Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b),

and 42 U.S.C. § 1997e(c).  Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.  Plaintiff's motion to return this case to mediation will be denied.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  __November 9, 2023__                    /s/ Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge